Berger, Fischoff, Shumer, Wexler & Goodman, LLP
6901 Jericho Turnpike, Suite 230
Syosset, NY 11791
(516) 747-1136
Counsel to Debtor
Heath S. Berger, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

TIMOTHY HILL CHILDREN'S RANCH, INC.                    Chapter 11
                                                       Case No. 23-73821

                                    Debtor.
-------------------------------------------------------------------X

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

Timothy Hill Children's Ranch, Inc. (the "Debtor") and Debtor-in-Possession, proposes the following Amended Plan of Reorganization (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. Section 101 et. seq.

1.    **DEFINITIONS**

For purposes of this Plan, the following terms shall have the respective meanings as hereinafter set forth (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires)

1)    <u>Administration or administrative claim or claims</u> - Any cost or expense of administration of the Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of operating the business of the Debtor, and all allowances of compensation or reimbursement of expenses for legal or other professional services to the extent allowed by the Bankruptcy Court under Sections 327, 330, 331 and 503 of the Bankruptcy Code.

1.2)    <u>Allowed administrative or administration claim or claims</u> - All or that portion of any administrative or administration claim which is an allowed claim.

1.3)    <u>Allowed Claim</u> - Any claim or portion of a claim (a) which is scheduled by the Debtor pursuant to Sections 521(1) and 1106(a)(2) of the Bankruptcy Code (other than a disputed claim); or (b) proof of which had been timely filed with the Bankruptcy Court pursuant to Section 501(a) of the Bankruptcy Code or on or before the date designated by the Court as the last date for filing Proofs of Claim, and with respect to which no objection to the allowance thereof has been

1

interposed within the applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or by an Order of the Court; or (c) which, after objection thereto, has been allowed in whole or in part by a Final Order.

1.4)    Allowed Priority Claim - All or that portion of an allowed claim entitled to priority under Sections 507(a)(3), (4), (6) and (8) of the Bankruptcy Code. Except as may be allowed by the Court in the case of an Allowed Priority Claim under Section 507(a)(8) of the Bankruptcy Code, any interest on such claim which accrued after the filing date, shall be part of the allowed priority claim.

1.5)    Allowed Secured Claim - All or that portion of any allowed claim that is secured by a valid enforceable lien on the property of the Debtor, to the extent of the value of such property, as determined by agreement between the Debtor and the holder of such allowed secured claim or by the Court by a Final Order pursuant to Section 506 of the Bankruptcy Code.

1.6)    Allowed Unsecured Claim - Any allowed claim that is not an allowed administrative claim, an allowed priority claim or an allowed secured claim.

1.7)    Bankruptcy Code - The Bankruptcy Reform Act of 1978 (11 U.S.C. Sections 101, et. seq.), as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (P.L. No. 98-353) and, as applicable to cases filed before its enactment, the Bankruptcy Reform Act of 1994 (P.L. 103-394) and Title 11 of the United States Code, as amended.

1.8)    Bankruptcy Rules - The Federal Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code.

1.9)    Business day - Any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.12)    Chapter 11 - Chapter 11 of the Bankruptcy Code.

1.11)    Chapter 11 case - *In re: Timothy Hill Children's Ranch, Inc.* Case No. 23-73821

1.12)    Claim - A claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code.

1.13)    Claimant - The holder of a claim.

1.14)    Class - A class of holders of Allowed Claims described in section 2 of this Plan

1.15)    Confirmation - Entry of an order by the Court approving the Plan in accordance with Chapter 11.

1.16)    Confirmation date - The date upon which the Court enters an order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.17)    Confirmation order - The order entered by the Court confirming the Plan in accordance with Chapter 11.

1.18)    Court - The United States Bankruptcy Court for the Eastern District of New York or such other court as may have jurisdiction over the Debtor's Chapter 11 case.

1.19)    Creditor - Any person having a claim against the Debtor that arose on or before the Petition Date or a claim against the Debtor's estate of a kind specified in Sections 502(g), (h) or (I) of the Bankruptcy Code.

1.20)    Debtor – Timothy Hill Children's Ranch, Inc.

1.21)    Disallowed claim - Any claim or portion thereof that has been disallowed by the Court by a Final Order.

1.22)    Disputed scheduled claim - (a) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtor as disputed, contingent or unliquidated.

1.23)    Disputed claim- A Claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code as unliquidated or contingent; or a Claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation by the Bankruptcy Code and Bankruptcy Rules by an Order of the Court, or by this Plan, which objection has not been determined, in whole or in part by a Final Order.

1.24)    Distribution date - Shall refer to the date of the initial distribution which shall occur within thirty (30) days of the Effective Date of the Plan.

1.25)    Effective Date of the Plan - The date on which the confirmation order becomes a final order.

1.26)    Entity - Defined at Section 101 (14) of the Bankruptcy Code.

1.27)    Final Order - An order or judgment as to which order or judgment (or any revision, modification or amendment thereof) (a) the time to appeal has expired and as to which no appeal has been filed, or (b) an order or judgment which has been appealed, has been affirmed on appeal and as to which appeal the time for further appeal has expired.

1.28)    Insider - As defined at Section 101(31) of the Bankruptcy Code.

3

1.29)    Petition Date – The date the petition was filed with the clerk of the Court – October 16, 2023.

1.30)    Plan - This Chapter 11 Plan of Reorganization as modified or amended from time to time as and to the extent permitted herein or by Bankruptcy Code.

1.31)    Professional person - As defined at Section 327(a) of the Bankruptcy Code.

1.32)    Property - shall refer to the Debtor's property as listed in its Schedules to its Bankruptcy Petition.

1.33)    Reorganized Debtor - The Debtor after Confirmation.

1.34)    Reserve fund - Shall be a fund which shall be established by the Debtor after the confirmation date, which shall be equal to a sum sufficient to pay (i) disputed claims which would have been paid under the Plan but for the dispute as either claimed by the creditor or determined by the Court; and (ii) estimated fees of the Debtor's counsel and accountants, which will be incurred subsequent to the confirmation date.

1.35)    Vendors- This includes all persons who have supplied the Debtor's with goods or services after the petition date.

## 2.          CLASSIFICATION OF CLAIMS AND INTERESTS

2.1)    Unclassified Claims - This includes the statutory fees due the Office of United States Trustee pursuant to 28 U.S.C. 1930(b), and interest if applicable.  It also includes any statutory fees due the Clerk of the Court.

2.2)    The allowed classified claims against the Debtor are divided into the following classes:

Class 1- Priority Claims Of the Taxing Authorities

Class 2 – Secured Claim of Dime Bank

Class 3 – Secured Claim of Pinnacle Bank, Simmons Bank and First Community Bank

Class 4-   Claim Under the Child Victim Act

Class 5 – Secured Claims of the Auto Finance Companies

Class 6 – First Insurance Funding

Class 7 – Allowed General Unsecured Claims

4

3.    **TREATMENT OF CLAIMS**

### ADMINISTRATION CLAIMS

Upon the Distribution Date, or as soon thereafter as is practicable Administrative Claims including fees due Berger, Fischoff, Shumer, Wexler & Goodman, LLP as attorney's for the Debtor and Joseph J. Tomaino, as the appointed ombudsman and his counsel, will be paid in full or as otherwise agreed. The amount requested by the Court retained professionals is subject to Court approval after notice and a hearing. The Debtor estimates it will owe Berger, Fischoff, Shumer, Wexler & Goodman, LLP $125,000.00 less the pre-petition retainer of $50,000.00. (Upon determination by the Court that such fees are reasonable and allowable) each holder of an Allowed Administration Claim shall be paid in cash in full in amount equal to 100% of each such Allowed Claim. Administration claims by Vendors or others providing goods and services incurred post petition in the ordinary course of business shall continue to be paid in the ordinary course.

### CLASS 1 – PRIORITY CLAIMS OF THE TAXING AUTHORITIES

This class includes the Allowed Priority Claims of the taxing authorities which are entitled to priority pursuant to Section 507(a)(7) of the Bankruptcy Code.

This class consists of a claim filed by the New York City Department of Taxation and Finance in the amount of $1,201.67 and a claim filed by the Massachusetts Department of Revenue in the amount of $609.83. The Debtor will pay these claims in full within thirty (30) days of the Effective Date of the Plan.

The Taxing Authorities are not impaired pursuant to Section 1124 of the Bankruptcy Code and are not entitled to vote pursuant to Section 1126 of the Bankruptcy Code.

### CLASS 2- SECURED CLAIM OF DIME BANK

Treatment: The legal, equitable, and contractual rights of Dime Bank shall be reinstated and unaltered by this Plan. Except to the extent that Dime Bank and the Debtor agree to less favorable treatment, on and after the Plan Effective Date, the Reorganized Debtor shall continue to pay Dime Bank in accordance with the terms of the Loan Documents including the Mortgage Note, Term Note (and any amendments thereto) and Line of Credit Agreement (and any amendments thereto) each as defined in the Final Order Authorizing Debtor's Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and Granting Adequate Protection entered in the Bankruptcy Case on March 6, 2024 [ECF Dkt. 78] ("Final Cash Collateral Order"). On the Effective Date, the Debtor shall pay Dime Bank a payment of one-half of Dime Bank's accrued legal fees and expenses in connection with enforcement of its rights under the Loan Documents and in this Chapter 11 Case (the "Lender Legal Fee Claim"). By no later than twelve (12) months following the Effective Date, the Debtor shall pay Dime the remainder of the Lender Legal Fee Claim.

Impairment and Voting: The Allowed Secured Claim of Dime Bank is unimpaired in accordance with section 1126(f) of the Bankruptcy Code, Dime Bank is conclusively presumed to accept this Plan and is not entitled to vote to accept or reject this Plan, and the vote of Dime Bank shall not be solicited with respect to such Allowed Secured Claim.

## CLASS 3 – SECURED CLAIM OF PINNACLE BANK, SIMMONS BANK AND FIRST COMMUNITY BANK

This class consists of three secured claims held by Pinnacle Bank, Simmons Bank and First Community Bank. The claim of Pinnacle Bank in the amount of $532,149.64 is secured against the property located at 358 Relax Drive, Smithville, TX. Pinnacle Bank's line of credit agreement with the Debtor matured in January 2024. Pinnacle has agreed to extend the line of credit for an additional eight (8) months with the Debtor maintaining current monthly payments of $4,400.00, commencing June 2024. If the Debtor fails to make any payment to Pinnacle Bank within the month that it falls due, Pinnacle Bank shall be entitled to stay relief upon filing an Affirmation of Non-Compliance with the Court. Upon the expiration of the extension, the Debtor will satisfy Pinnacle's loan in full. Pinnacle Bank shall be entitled to immediate, self-executing stay relief effective January 21, 2025. The claim of Simmons Bank in the amount of $508,353.91 is secured against the property located at 222 Durham Rod, Searcy AZ. First Community Bank has a mortgage on the property located at 202 Durham Road, Searcy AZ in the amount of $499,999.99. The legal, equitable and contractual rights of each of these creditors shall remain unaltered and fully effective. Each creditor shall maintain their liens and the Debtor will continue to make regular monthly payments pursuant to the terms and conditions of the notes and mortgages.

This Class is not impaired pursuant to Section 1124 of the Bankruptcy Code and are not entitled to vote pursuant to Section 1126 of the Bankruptcy Code.

## CLASS 4- CLAIM UNDER THE CHILD VICTIM ACT

This class consists of the claims of John Joseph Barci, John J. Gubitosi and Andres Alexander Ramons, three plaintiffs who commenced a lawsuit in the Supreme Court of the State of New York, County of Suffolk against the Debtor, members of the Debtors board of directors both past and current and various employees of the Debtor pursuant to the Child Victim Act (enacted on February 14, 2019) in which the New York State Governor of legislature approved legislation that amended the New York CPLR by, *inter alia*, adding CPLR 214-g which revives sexual abuse actions (involving both intentional conduct and negligence) that were previously time barred under New York law. The parties have agreed to resolve the pending lawsuits and each claimant shall receive the sum of $566,666.66 in full satisfaction of any and all claims against the Debtor and all named defendants in the pending actions. This class will be paid the settlement amount in full within thirty (30) days of the Effective Date of the Plan. Upon receipt of the amount set forth, claimants shall file a stipulation of discontinuance, with prejudice, in the State Court for all actions pending.

6

Upon receipt and exchange of the settlement payment, in full satisfaction, Barci, Gubitosi and Ramons fully release and forever discharge the Debtor, all past and present board members and any employees who were named in the lawsuits and each of their respective heirs, agents, legal representatives, successors and beneficiaries from any and all claims, demands, debts, actions and causes of action of any kind of nature whatsoever, matured or unmatured, liquidated or unliquidated, fixed or contingent, arising in law or in equity, known or unknown which the parties have or may have had at any time against the Debtor, past and present board members and any employee of the Debtor. This release is a result of a global settlement with the Plaintiffs. Without this global settlement and the agreement reached with the parties obtaining releases, the Debtor would be unable to proceed.

This class also consists of a claim filed by Jayme Thode who commenced a lawsuit in Supreme Court of the State of New York, County of Suffolk against the Debtor, members of the Debtors board of directors both past and current and various employees of the Debtor pursuant to the Child Victim Act (enacted on February 14, 2019) in which the New York State Governor of legislature approved legislation that amended the New York CPLR by, *inter alia*, adding CPLR 214-g which revives sexual abuse actions (involving both intentional conduct and negligence) that were previously time barred under New York law. The parties have agreed to resolve the pending lawsuit and the claimant shall receive the sum of $100,000.00 in full satisfaction of any and all claims against the Debtor and all named defendants in the pending actions. This class will be paid the settlement amount in full within thirty (30) days of the Effective Date of the Plan. Upon receipt of the amount set forth, claimants shall file a stipulation of discontinuance, with prejudice, in the State Court for all actions pending.

Upon receipt and exchange of the settlement payment, in full satisfaction, Thode will fully release and forever discharge the Debtor, all past and present board members and any employees who were named in the lawsuits and each of their respective heirs, agents, legal representatives, successors and beneficiaries from any and all claims, demands, debts, actions and causes of action of any kind of nature whatsoever, matured or unmatured, liquidated or unliquidated, fixed or contingent, arising in law or in equity, known or unknown which the parties have or may have had at any time against the Debtor, past and present board members and any employee of the Debtor. This release is a result of a global settlement with the Plaintiff. Without this global settlement and the agreement reached with the parties obtaining releases, the Debtor would be unable to proceed.

This Class is impaired pursuant to Section 1124 of the Bankruptcy Code and is entitled to vote pursuant to Section 1126 of the Bankruptcy Code.

## CLASS 5 – SECURED CLAIMS OF THE AUTO FINANCE COMPANIES

The claim of Americredit Financial Services in the amount of $38,612.75 is secured against a 2021 GMC Sienna 2500. The claim of Ally Bank in the amount of $23631.83 is secured against the 2016 Dodge Ram 1500 crew cab. Each creditor shall maintain its lien and the Debtor will continue to make monthly payments pursuant to the note.

This Class is not impaired pursuant to Section 1124 of the Bankruptcy Code and is not entitled to vote pursuant to Section 1126 of the Bankruptcy Code.

## CLASS 6 – FIRST INSURANCE FUNDING

First Insurance Funding has a security interest in Insurance premiums and credits. The First Insurance premium finance agreement is ratified by the Debtor and all terms and conditions of the agreement remain unaltered and fully effective and will continue to be paid post-petition in accordance with the terms and conditions of its contract..

This Class is unimpaired pursuant to Section 1124 of the Bankruptcy Code and is not entitled to vote pursuant to Section 1126 of the Bankruptcy Code.

## CLASS 7 – ALLOWED GENERAL UNSECURED CLAIMS

This class consists of the Allowed General Unsecured claims of the Debtor. A creditor may hold an allowed general unsecured claim by virtue of the Debtor having scheduled the claim in its schedules as a claim that is not disputed, unliquidated or contingent. In such instance the claim shall be deemed allowed at the amount scheduled. In the event that a general unsecured creditor filed a timely proof of claim, and that claim was not objected to by the Debtor, that claim shall also be deemed an allowed general unsecured claim. Finally, if a creditor disagreed with the amount of the claim as scheduled by the Debtor, that creditor would also have an allowed claim by the filing of a timely proof of claim which claim was not objected to by the Debtor.

This class consists of 37 holders of Allowed General Unsecured Claims. This class totals approximately $561,123.65. In full satisfaction, compromise, settlement, release and discharge of and in exchange for such Allowed General Unsecured claim, each holder thereof shall receive within thirty (30) days of the Effective Date of the Plan, or as soon as reasonably practicable thereafter, 100% of its Allowed Claim.

The General Unsecured Creditors are impaired pursuant to Section 1124 of the Bankruptcy Code because they are being paid 100% of the claim without interest and are entitled to vote pursuant to Sectio 1126 of the Bankruptcy Code.

## 4.    MEANS OF EFFECTUATING THE PLAN

Prior to the Effective Date of the Plan: (a)    the Debtor shall execute and deliver to Dime Bank amendments to the Term Note and Line of Credit Agreement consistent with the terms set forth in the Final Cash Collateral Order;

The Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance (i) acceptable to (x) the Debtor, (y) Dime Bank, and such Confirmation Order shall not have been reversed, stayed, amended, modified, dismissed, vacated or reconsidered;

The Debtor will be paying all allowed claims in full within thirty (30) days of the Effective Date of the Plan. The Debtor believes it will require $2,261,124.00 for confirmation and will have the necessary funds in escrow before confirmation of the Plan, which shall be effectuated from ongoing business operations and contributions from its network of private supporters donations. .

## 5.  CLAIMS IMPAIRED BY THE PLAN

5.1)  The claims in Class 4 and 7 are impaired and entitled to vote upon the Plan.

## 6.  VOTING AND ACCEPTANCE

6.1)  All members of impaired classes which hold Allowed Claims shall be entitled to vote. A class will have accepted the Plan if more than one half the number of members voting accepts the Plan and more than 2/3 of the total dollar amount voting accepts the Plan.

## 7.  PROVISIONS CONCERNING DISTRIBUTIONS

7.1)  <u>Manner of payments under the Plan</u>. Payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank. The Reorganized Debtor shall act as the Distributing Agent on all distributions.

7.2)  <u>Rounding to the nearest dollar</u>. Any other provision of the Plan to the contrary withstanding, no payments of portions of a dollar will be made. Whenever any payment of a portion of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down).

7.3)  <u>Unclaimed cash</u>. Except as otherwise provided herein, in the event any claimant fails to claim any cash within ninety (90) days from the date such cash is distributed, such claimant shall forfeit all rights thereof, and to any and all future payments, and thereafter the claim for which such cash was distributed shall be treated as a Disallowed Claim. In this regard, distributions to claimants entitled thereto shall be sent to its last known address set forth on a proof of claim filed with the Court or, if no proof of claim is filed, on the schedules filed by the Debtor, or to such other address as may be designated by a claimant in a writing delivered to the Debtor, with a copy to the Debtor' counsel at least one week prior to the distribution. All unclaimed cash shall become the property of the Debtor.

7.4)  <u>Distributed payments or distribution</u>. In the event of any dispute between and among claimants (including the entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, they may, in lieu of making such payment or distribution to such entity, make it instead into an escrow account or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

9

7.5)    <u>Full and Final Satisfaction.</u> All payments, distributions and transfers of cash or property under the Plan are in full and final satisfaction, settlement and release of all claims against the Debtor and the estate of any nature whatsoever existing at the confirmation date. Except as otherwise provided in the Plan, , the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, on the latest to occur of (a) the Effective Date, (b) the entry of a Final Order resolving all Claims in the Chapter 11 Case and (c)the final distribution made to holders of Allowed Claims in accordance with the Plan, all Claims against the Debtor and Debtor in Possession, , shall be discharged and released in full. All Persons and Entities shall be precluded from asserting against the Debtor, the Debtor in Possession, its successors or assigns, including, without limitation, the Reorganized Debtor, or its respective assets, properties or interests in property, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal basis therefore were known or existed prior to the Confirmation Date regardless of whether a proof of Claim was filed, whether the holder thereof voted to accept or reject the Plan or whether the Claim is an Allowed Claim.

Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all Persons or Entities who have held, hold or may hold Claims or any other debt or liability that is discharged, terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability that is terminated or cancelled pursuant to the Plan against the Debtor, the Debtor in Possession or the Reorganized Debtor, the Debtor's estate, or its respective properties or interests in properties, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, the Debtor in Possession or the Reorganized Debtor, the Debtor's estate, or its respective properties or interests in properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Debtor in Possession or the Reorganized Debtor, or against its respective property or interests in property, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, the Debtor in Possession or the Reorganized Debtor, or against its respective property or interests in property, with respect to any such Claim or other debt or liability that is discharged that is terminated or cancelled pursuant to the Plan.

Nothing in the Plan shall limit the liability of the Debtor or any of its agents, assigns, or professionals for acts of gross negligence, willful misconduct, breach of fiduciary duty, criminal conduct, and/or any disclosure of confidential information that causes damages.

Nothing in the Plan shall limit the liability of any professionals retained by the Debtor to its respective clients, including pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

Nothing in this Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or

any state and local authority against the Debtor or any Debtor's respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives, and assigns (the "Released Parties"), nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against the Released Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the Unites States or any state and local authority against the release Parties referred to herein.

7.6)    Nothing in this Plan shall release any party from their duties and obligations under the Employee Retirement Security Act ("ERISA") of 1974, as amended or release any claim the PBGC or the Pension Plan may have relating to fiduciary breach

Notwithstanding anything to the contrary herein, if the Pension Plan has not been terminated prior to the entry of the Confirmation Order, all claims of, or with respect to, the Pension Plan (including any based on fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended) and all Claims of the Pension Benefit Guaranty Corporation, whether or not contingent, under 29 U.S.C. §1362(b) for unfunded benefit liabilities, under 29 U.S.C. § 1306(a)(7) for termination premiums, under 29 U.S.C. § 1362(c) for due and unpaid employer contributions, and any liabilities incurred as a result of an audit or the Pension Plan's termination under 29 U.S.C. § 1341(b), shall not be discharged, released, exculpated or otherwise affected by the Plan, the entry of the Confirmation Order, or the Chapter 11 Case. Notwithstanding anything to the contrary herein, in the event that the Pension Plan does not terminate prior to the entry of the Confirmation Order, obligations of the Debtor under the Pension Plan as of the Effective Date shall become obligations of the applicable Reorganized Debtor and, as required by the Internal Revenue Code of 1986, as amended, or the Employee Retirement Income Security Act of 1974, as amended, the controlled group members.

## 8.    TREATMENT OF EXECUTORY CONTRACTS AND LEASES

8.1)    Except as provided herein, any and all executory contracts or leases of the Debtor which have not been rejected by Order of the Bankruptcy Court are hereby assumed.

## 9.    PROCEDURES FOR RESOLVING DISPUTED CLAIMS

9.1)    The Time for Objections to Claims.  Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made not later than thirty (30) days after to the Confirmation Date or within such other time period as may be fixed by the Court.

9.2.)    Resolution of Disputed Claims.  Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claim, in its sole discretion, without notice to any party in interest.

11

9.3)    <u>Payments</u>. Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim by a Final Order of the Court shall be made in accordance with the Plan. Such payments and distributions shall be made within thirty (30) days after the later of the Distribution date or the entry of a Final Order allowing such Claim. Payments made in accordance with this section shall not include interest on the amount of such payment.

## 10.    **DEFAULT**

10.1)    Failure of the Debtor to make the cash distributions required under the Plan to any and all creditors within 30 days of the Distribution date or failure of the Debtor to comply with any of the covenants or obligations contained in the Plan, which failure shall remain uncured for a period of ten (10) days after notice and an opportunity to cure, shall constitute a default under the Plan. The parties in interest giving such notice shall be entitled to exercise the following remedies (i) sue the Debtor for breach of contract; (ii) seek specific performance; (iii) seek any other remedy under the Bankruptcy Code, at law or equity. The foregoing shall not be construed to prevent the implementation of any modification of the Plan, in accordance with the provisions of the Bankruptcy Code.

## 11.    **RETENTION OF JURISDICTION**

11.1)    The Court shall retain jurisdiction of this Chapter 11 case pursuant to and for the purposes set forth in Section 1127(b) of the Code and:

(a)    to hear and determine all controversies concerning allowance of Claims;

(b)    to determine any and all applications for compensation for Professional Persons and similar fees;

(c)    to hear and determine any and all pending applications for the rejection or assumption or for the assumption and assignment, as the case may be, of executory contracts to which the Debtor are a party or with respect to which Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(d)    to determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court;

(e)    to modify the Plan pursuant to Section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile and inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

(f)    to hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the plan;

12

(g)     to hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court in the Chapter 11 case entered on or before the Confirmation Date;

(h)     to hear and determine any and all controversies and disputes arising under, or in connection with, the Plan;

(i)     to adjudicate all controversies concerning the classification of any Claim or Stock Interest;

(j)     to liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(k)     to adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

(l)     to adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 case;

(m)     to recover all assets and properties of the Debtor wherever located, including the prosecution and adjudication of all causes of action available to the Debtor as at the Confirmation Date;

(n)     to enter any order, including injunctions necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers that the Court may deem necessary or appropriate;

(o)     to enter an order of Consummation concluding and terminating the Chapter 11 case;

(p)     to hear and determine adversary proceedings seeking the recovery of fraudulent conveyances, preferences or property or assets of the estate; and

(q)     to make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof;

13

12. CONDITIONS PRECEDENT TO CONFORMATION OF THIS PLAN

The following are conditions precedent to the Effective Date of the Plan:

(a)     The Debtor shall execute and deliver to Dime Bank amendments to the Term Note and Line of Credit Agreement, in forms acceptable to Dime Bank, consistent with the terms set forth in the Final Cash Collateral Order;

(b)     The Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtor and Dime Bank, and such Confirmation Order shall not have been reversed, stayed, amended, modified, dismissed, vacated or reconsidered

13.  **EXCULPATION**

Neither the Debtor, nor Debtor's attorneys, shall have or incur any liability to any entity for any action from October 16, 2023 (the petition date) through the Effective Date taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this chapter 11 case or the Plan except with respect to their obligations under the Plan, and any related agreement or for bad faith, willful misconduct, gross negligence, breach of a fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts.  Notwithstanding any other provision hereof, nothing in the Plan shall(s) effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor,  or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against the Released Parties referred to herein for any liability whatever, including without limitation, nay Claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party form any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) limit the liability of the Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rule of Professional Conduct.

14

14.    **MISCELLANEOUS PROVISIONS**

14.1)    <u>Payment Dates</u>. If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or legal holiday, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

14.2)    <u>Notices.</u> Any notice to be provided under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid (with additional copy to Debtor's counsel by telefax); or by hand delivery, addressed as follows:

To the Debtor:
　　　　Timothy Hill Children's Ranch, Inc.
　　　　298 Middle Country Road
　　　　Riverhead, New York 11901

To the Debtor's counsel:
　　　　Berger, Fischoff, Shumer, Wexler & Goodman, LLP
　　　　Attn: Heath S. Berger, Esq.
　　　　6901 Jericho Turnpike, Suite 230
　　　　Syosset, New York 11791
　　　　Fax No. (516)747-0382

All payments, notices and requests to Claimants, shall be sent to them at its last known address. The Debtor or any Claimant may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt, which receipt shall be deemed to be on the third business day after mailing. Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

14.3)    <u>Professional Fees</u>. Following the Confirmation Date, the estate of the Debtor shall be responsible for payment, and shall pay reasonable compensation and reimbursement of expenses due to professionals retained by Debtor (the "Professionals"), for services rendered post-confirmation. Payment shall be made upon the submission of invoices, by the Professionals to the Debtor, within ten (10) days of receipt of the invoices, without approval or review by the Court, unless an objection is raised. In the event an objection is raised, then appropriate applications for reimbursement shall be made to the Court and paid upon order of the Court.

14.4)    <u>Headings</u>. The headings used in the Plan are inserted for convenience only and are not to be deemed a substantive portion of the Plan nor in any manner are they to affect the provisions of the Plan.

14.5)   <u>Severability</u>. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

14.6)   <u>Governing Law.</u> Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

14.7)   <u>Successors and Assigns.</u> The rights and obligations of any entity named or referred to in the Plan shall be binding upon and shall inure to the benefit of, the successors and assigns of such entity.

14.8)   <u>Re-vesting of Property upon Confirmation</u>. Upon the confirmation of this Plan, the Debtor shall be re-vested with legal and equitable title to its property and the property of the estate.

Dated: Syosset, New York
       May 23, 2024

                    **Timothy Hill Children's Ranch, Inc.**

                    By:   _/s/ Thaddeus Hill_____
                          Thaddeus Hill, Executive Director

                    **Berger, Fischoff, Shumer, Wexler & Goodman, LLP**

                    By:   _/s/ Heath S. Berger_____
                          Heath S. Berger, Esq.
                          Attorneys for Debtor and Debtor-in-Possession
                          6901 Jericho Turnpike, Suite 230
                          Syosset, New York 11791
                          516-747-1136
                          hberger@bfslawfirm.com